**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

CARLOS LUIS ROMERO TERAN,

Petitioner,

v.

CHRISTOPHER J. LAROSE, Senior Warden, Otay Mesa Detention Center, San Diego, California, et al.,

Respondents.

Case No.: 3: 26-cv-04591-RBM-MSB

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

**[Doc. 1]**

Pending before the Court is Petitioner Carlos Luis Romero Teran's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241. (Doc. 1.) For the reasons set forth below, the Petition is **GRANTED**.

## I. BACKGROUND

Petitioner, a citizen of Venezuela, last entered the United States on a B2 visa on August 16, 2019. (Doc. 1 ¶ 4.) Petitioner filed an I-589 asylum application on April 20, 2020, and attended his biometric appointment for his asylum application on August 19, 2020. (*Id.* ¶¶ 5–6.) He also applied for Temporary Protected Status ("TPS") "and on May 9, 2022, his first TPS application was approved granting him employment authorization valid until September 9, 2022." (*Id.* ¶ 7.) Petitioner "requested and received an approval

of his employment authorization through his asylum application on May 6, 2022 valid through May 5, 2024." (*Id.*) In September 2022, Petitioner renewed his employment authorization through TPS "and he received employment authorization valid through September 10, 2025." (*Id.* ¶ 8.) In early 2024, Petitioner again renewed his employment authorization through his asylum application through March 4, 2029. (*Id.* ¶ 9.)

On August 7, 2026, Petitioner and his wife were approached by U.S. Immigration and Customs Enforcement ("ICE") agents at the airport after flying back from Oakland to San Diego. (*Id.* ¶ 11.) The ICE officers identified Petitioner by name, asked him for his identification, took his work permit, and "said they knew he had an application for asylum pending with USCIS but that his visa had expired." (*Id.* ¶ 13.) The ICE officers also said that Petitioner "had to go with them, but that there was a long line with asylum with USCIS, that he would be able to be in the front of the line to see a judge, and that he would see a judge within 10 days or so." (*Id.*) The ICE officers then took Petitioner to an ICE field office and presented him with documents for the first time at approximately 7:00 p.m. (*Id.* ¶ 14.) Petitioner alleges that the documents did not include a warrant. (*Id.*) Petitioner was then transported to the Otay Mesa Detention Center at approximately 1:00 a.m. that next morning. (*Id.*) "[O]n August 20, 2026, Petitioner was scheduled for a bond hearing, but withdrew the bond hearing on his own request." (Doc. 4 at 2.)

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III. DISCUSSION

Petitioner claims his immigration detention violates 8 U.S.C. § 1357(a)(2), 8 U.S.C. § 1226(a), the Fifth Amendment's Due Process Clause, and the Administrative Procedure Act. (Doc. 1 ¶¶ 49–60.) It is undisputed that Petitioner's detention is governed by 8 U.S.C. § 1226(a). (*See* Doc. 1 ¶ 20; Doc. 4 at 2.) However, the Parties disagree as to whether release is warranted in this case. Petitioner argues that he should be released because he was unlawfully detained "without any due process and without a warrant." (Doc. 1 ¶¶ 1, 17; *see* Doc. 5 at 2–6.) Respondents contend that the Petition should be denied because Petitioner failed to exhaust administrative remedies, does not state a habeas claim, and was issued an administrative warrant on August 7, 2026. (Doc. 4 at 3, 6.) As discussed below, the Court finds Petitioner's immediate release is the appropriate remedy because his detention without notice or a pre-deprivation hearing violated due process.

### A. Exhaustion

Respondents argue that "Petitioner's request for habeas relief is not ripe for review" because Petitioner must "properly exhaust[ ] administrative remedies prior to seeking judicial action." (Doc. 4 at 3–4.)

"Exhaustion can be either statutorily or judicially required." *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004). Although 28 U.S.C. § 2241 "does not specifically require petitions to exhaust direct appeals before filing petitions for habeas corpus," the Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001) (cleaned up). The Court "may waive the prudential exhaustion requirement if administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (cleaned up). "An exception to the exhaustion requirement has been carved for constitutional challenges to . . . [DHS] procedures." *Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013) (per curiam) (quoting *Rashtabadi v. INS*,

23 F.3d 1562, 1567 (9th Cir. 1994)).

In this case, Petitioner claims DHS "unlawfully detained [him] on or about August 7, 2026 without first being provided a warrant or any due process to determine whether stripping him of his liberty interest was justified." (Doc. 1 ¶ 1.) Although Petitioner is eligible to have a § 1226(a) bond hearing before an IJ (*see* Doc. 4 at 4), administrative remedies would be "inadequate and futile" because a post-deprivation bond hearing would not address the propriety of Petitioner's re-detention, which concerns the constitutionality of an agency action prior to the bond hearing. *See Cardenas v. Giles*, Case No. 8:26-CV-02322-ACCV, 2026 WL 2722730, at *2 (C.D. Cal. Sept. 14, 2026) (quoting *R.N.G. v. Semaia*, — F.Supp.3d —, 2026 WL 2089544, at *3 (C.D. Cal. July 14, 2026)); *Zhou v. Janec[k]a*, Case No. 5:26-cv-04167-DTB, 2026 WL 2365550, at *5 n.4 (C.D. Cal. Aug. 14, 2026) ("Constitutional claims are generally excepted from the exhaustion requirement because neither immigration judges nor the BIA are permitted to consider constitutional challenges to the statutes they administer.") (citing *Sola*, 720 F.3d at 1135). "Accordingly, given the inadequacy of available administrative remedies to redress Petitioner's irreparable harm, the Court finds it appropriate to waive any prudential exhaustion requirement." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).

**B. Due Process**

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under the *Mathews* test, courts consider: (1) "the private interest that will be affected by the official action;" (2) the "risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest including the function involved

and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

As a preliminary matter, Petitioner has a protected liberty interest in remaining out of custody. Petitioner lawfully entered the United States in August 2019 and filed his asylum application in April 2020, but Respondents made a decision not to detain him during the pendency of his application. (*See* Doc. 1 ¶¶ 4–6, 9, 17.) "Courts have found a substantial liberty interest in circumstances where noncitizens commenced immigration proceedings, and the government chose not to detain them." *Zhou*, 2026 WL 2365550, at *5 (collecting cases). "[W]hile Respondents' decision not to detain Petitioner was discretionary, that decision nonetheless created a protected interest in remaining at liberty while the government processed [his] asylum application." *Cardenas*, 2026 WL 2722730, at *3 (internal citation omitted) (citing 8 U.S.C. § 1226(a)). "The government's decision not to detain Petitioner 'when it processed [his] asylum application, took [his] biometrics, . . . and advised [him] to appear for multiple hearings over a period of years,' . . . gave rise to 'a liberty interest on Petitioner's part that [he] would remain free unless [he] violated [his] conditions of release." *Kharitonova v. Albarran*, Case No. 3:26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) (analyzing *Mathews* factors on a motion for temporary restraining order); *see also Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause."). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

The Court further finds that all three *Mathews* factors support a finding that Petitioner's detention without an opportunity to be heard deprived Petitioner of his due process rights. First, as previously discussed, Petitioner has a significant liberty interest in remaining out of immigration custody. For approximately six years, "Respondents, with 'full knowledge of Petitioner's identity, immigration status, and location during the pendency of [his] immigration application continuously elected not to detain [him] while

exercising authority over [his] legal proceedings.'" *Cardenas*, 2026 WL 2722730, at *3 (quoting *Zhou*, 2026 WL 2365550, at *5) (cleaned up). "Indeed, Respondents 'deliberately acquiesced' to Petitioner's continued freedom by, among other things, affirmatively granting [his] employment authorization while [his] application was pending." *Id.* (quoting *Abdeltawab v. Armant*, Case No. EDCV 26-01520-MWF (DTB), 2026 WL 1045564, at *2 (C.D. Cal. Apr. 13, 2026)) (cleaned up). "Although the government did not detain and then release [him], it made a decision *not* to detain [him] in the first place; Petitioner thus has the same liberty interest in [his] continued freedom as an individual initially detained." *Kharitonova*, 2026 WL 531441, at *2 (emphasis in original).

Second, the risk of erroneous deprivation of such interest is high without a pre-detention hearing. "Civil immigration detention is permissible only to prevent flight or protect against danger to the community." *Pinchi*, 792 F. Supp. 3d at 1035 (citing *Zadvydas*, 533 U.S. at 690); *see also Hernandez*, 872 F.3d at 994 ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). And here, Respondents have presented no evidence that Petitioner's detention would serve either purpose. Respondents allowed Petitioner to remain at liberty for over six years after he filed his asylum application and granted him several employment authorization requests during that time. (*See* Doc. 1 ¶¶ 5–9.) Petitioner also maintained a clear criminal record, lawful employment, and strong community ties. (*See id.* ¶¶ 15, 17.) "Given the significant risk of an erroneous deprivation of Petitioner's liberty, a pre-detention hearing would afford Petitioner the opportunity to demonstrate [he] does not pose a danger to the community or flight risk." *Cardenas*, 2026 WL 2722730, at *3 (citing *Pinchi*, 792 F. Supp. 3d at 1035). "[W]here a petitioner has not received a hearing or other process prior to the revocation of [his] liberty, 'the risk of an erroneous deprivation of liberty is high." *Zhou*, 2026 WL 2365550, at *6 (quoting *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025)) (cleaned up).

Third, Respondents' interest in detaining Petitioner without a hearing is low. Respondents do not identify any material change in circumstances justifying Petitioner's detention. *See Pinchi*, 792 F. Supp. 3d at 1036. The fact the government "may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *E.A. T.-B.*, 795 F. Supp. 3d at 1322. "Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." *Id.* Respondents' delay in arresting Petitioner more than four years after his visa expired (*see* Doc. 4-1, Ex. 1 at 2), only confirms "a pre-deprivation hearing was entirely feasible and required." *Galeano-Ariza v. Warden*, No. EDCV 26-4081-HDV-BFMx, 2026 WL 2491404, at *4 (C.D. Cal. Aug. 24, 2026). As such, Respondents have minimal interest in detaining Petitioner without a pre-detention hearing.

Based on this review of the *Mathews* factors, the Court concludes that Petitioner's detention without notice of a pre-deprivation hearing violated the Fifth Amendment's Due Process Clause and rendered his detention unlawful.[1]

## IV. CONCLUSION

Based on the foregoing reasons, the Petition is **GRANTED**. Accordingly:

1. The Government is **ORDERED** to immediately release the noncitizen from custody, subject to the conditions to which he was previously subjected. Any property confiscated during his arrest shall be returned to him.
2. The Court **ORDERS** that, prior to any such re-detention, Petitioner is entitled to notice and a hearing before an immigration judge to determine whether detention is warranted.
3. The noncitizen bears the burden of demonstrating, by a preponderance of the

---

[1] In light of the disposition herein, the Court declines to address the Petition's remaining grounds for relief.

evidence, that he is not a danger to the community or a flight risk. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

**IT IS SO ORDERED**.

DATE: September 21, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE